1   Kurt K. Robinson SBN 108095
2   Attorney at Law
    1970 Broadway Suite 1225
3   Oakland, Ca 94612
    (510) 435-3794
4   (510)279-5844(fax)

5   Attorney for Defendant

6

7           **UNITED STATES DISTRICT COURT**

          **NORTHERN DISTRICT OF CALIFORNIA**
8
          **SAN JOSE DIVISION**
9

10   UNITED STATES OF AMERICA,     )   CASE NO. CR-05-00723
                               )
11                Plaintiff,    )   **NOTICE OF MOTION AND MOTION TO**
                               )   **SUPPRESS EVIDENCE DERIVED FROM**
12                                )   **ILLEGAL WIRETAPS AND ELECTRONIC**
          vs.             )   **INTERCEPTS; REQUEST FOR JUDICIAL**
13                                )   **NOTICE AND FOR FRANKS HEARING RE**
    PONG LIN LIU a/k/a PETER P. LIU,   )   **NECESSITY;MEMORANDUM OF POINTS**
14   ERIC ZI PING LEI              )   **AND AUTHORITIES; DECLARATIONS;**
    DERRICK TAI DUY VU,         )   **EXHIBITS**
15   PHUONG THAI HUU NGUYEN,    )
    BOUNXOU ALEX BILLAMAY,     )
16   SEAN J. WONG,               )   Date:       November 6, 2006
    MAN NING TAO, and          )   Time:       1:30 p.m.
17   MAN NEI LUI,                )   Place:     Honorable Judge Ware
               Defendants.    )
18 _____ )

19   TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES OF

20   AMERICA AND ITS ATTORNEYS:

21

22        PLEASE TAKE NOTICE that on November 6, 2006 at 1:30 p.m., or as soon thereafter as

23   counsel may be heard in the Courtroom of the Honorable Judge Ware in the above-entitled court,

24   defendant Pong Lin Liu will and hereby does move this Court for an order suppressing all evidence,

25   and the fruits thereof, derived from the illegal interception of wire and electronic communications in

26   this case as more particularly set forth in the attached Memorandum of Points and Authorities.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    Defendant requests this Court take judicial notice of the Affidavit of DEA (DEA) Special Agent (S/A) Michael K. Robinson filed Exhibit A in support of the  Application for Interception of Wire  Communications,  CR  Misc.  No.5-90259,  seeking  the  original  interception  of  wire communications from Target Telephone #3, Telephone No. 415-756-2064, bearing ESN Number 06710556265, used primarily by Peter Liu;  This is a Metro PCS Inc. cellular phone, subscribed to Calvin Luu of 246 Virginia Avenue, San Francisco, CA  94110-5139.  The Affidavit of DEA Special Agent Michael K. Robinson in support of the May 31, 2005  Application for Interception of Wire and Electronic Communications, CR Misc. No. 5-90259, seeking the interception of  telephones , all primarily used by Pong Lin Liu or Peter Lui, collectively referred to as the "Target Facilities"; DEA S/A  Robinson's Affidavit in support of the March 31, 2006 Application for Interception of Wire and Electronic Communications,  CR Misc. No.05-90136 seeking communications of Eric Lei ,  seeking authorization  to  intercept  the  wire  and  electronic  communication  of  Derrick  Vu;    seeking authorization to intercept the wire and electronic communication of Pong Lin Liu.  See, F.R.Evid. 201.

1      Defendant also requests a <u>Franks</u> evidentiary hearing on the showing of necessity in the

2  affidavits of DEA S/A Robinson, in CR Misc. Nos. described above.

3      This Motion is based on the instant Notice of Motion and Motion, 18 U.S.C. Section 2510, <u>et</u>

4  <u>seq</u>., the Fourth Amendment to the Constitution of the United States, the attached Memorandum of

5  Points and Authorities, the Declarations and Exhibits attached hereto, the files and records in the

6  case, and any and all other matters that may come to the Court's attention prior to or during the

7  hearing of this Motion.

8

9  DATED:                              Respectfully submitted,

10

11

12                                    _____
                                      KURT K .ROBINSON
13                                    Attorney for Defendant
                                      PONG LIN LIU

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### SUMMARY OF ROBINSON'S AFFIDAVIT IN SUPPORT OF WIRETAP FOR DEFENDANT LIU'S CELLULAR TELEPHONE.

In the case at bar Michael Robinson filed three separate affidavits.   The three were virtually identical in many areas.   On March 30, 2005, DEA S/A Michael Robinson stated that he is making a affidavit in support of an application for the continuing interception of wire communications to and from the AT&T cell phone subscribed to Calvin Luu of  246 Virginia Avenue, San Francisco, CA. 94110-5139          of wire communications from defendant Liu's cell phone # 415-756-2064 (Target Telephone #3).  S/A Agent Robinson asserts that various individuals, including defendant Liu were conspiring to distribute, possess with intent to distribute, and import MDMA and the substantive crimes of distribution, possession with intent to distribute and importation of MDMA, as well as the laundering of monetary instruments and the unlawful use of communication facilities in committing or facilitating the commission of these offenses.[1]

S/A Robinson alleges there is probable cause to believe that wire and electronic communications of the suspects concerning the above-mentioned offenses would be obtained through the requested intercepts and would reveal the manner and means of the commission of the offenses, the methods of operation, the identity and roles of accomplices, aiders and abetters and co-conspirators, the methods of distribution and transfer of narcotics and narcotics proceeds, the existence and location of records evidencing narcotics trafficking and money laundering, the location receipt administration control, management and disposition of narcotics and narcotics proceeds, and the locations of the suspects and the names, telephone numbers and residences of the suspects, associates, suppliers, manufacturers, transporters, financiers, distributors, couriers and customers.

S/A Robinson claims that normal investigative techniques have been tried and have failed, appear reasonably unlikely to succeed if continued, appear unlikely to succeed if tried or will be too dangerous if tried. Robinson Declaration  Id., ¶ , p. 4 ln 19.  After describing the principal suspects

---

[1]

See, Affidavit of DEA S/A Michael Robinson in support of May 31, 2005 Wiretap Application, CR -5-90259 Misc. JW , attached hereto as Exhibit "A."

2

1   and their criminal backgrounds, Id atp 5 , S/A Robinson refers to the prior applications for electronic

2   surveillance being granted in two related cases these cases were Application CR 05-90031 filed

3   January 27, 2005, Application CR 05-90259,  Application CR 05-90136 filed March 30, 2005.

4        S/A Robinson's declaration disclosed that several confidential sources were also used in the

5   investigation.  Robinson asserts that the initial confidential source, CS, is both reliable and credible

6   because this source's information has been corroborated by surveillance, pen register records, toll

7

8   analysis, search records, travel records, and investigative data bases.

9        The confidential source utilized in this case arranged the initial introduction between the

10  undercover agent and Bounxou Billamay on September 24, 2003, almost three years ago.  The CS

11  also assisted in the meeting on November 20, 2003 between the undercover agent and Derrick Vu,

12  Billamay's source of MDMA supply.  The CS has not provided any information to DEA concerning

13  this investigation since March 4, 20002.  DEA has intentionally walled the CS off from this

14  investigation since that time in order for the undercover agents to to work directly with Derrick Vu

15  and attempt to infiltrate his MDMA trafficking organization.  The CS has not met with Derrick Vu

16

17  since the meeting on November 20, 2003 and was only introduced to Vu through Bounxou Billamay,

18  who is below Vu in the target organization.

19

20        Robinson further states, "After the undercover agent was successfully introduced to Derrick

21  Vu on November 20, 2003, agents decided to cease utilizing the CS in this investigation and instead

22  attempted to infiltrate the target organization by use of the undercover agent." AFFIDAVIT OF

23  MICHAEL K. ROBINSON, Page 8.

24        Robinson pointed out that several other confidential sources have been utilized in this case

25  related to  Tampa, Florida and Atlanta, Georgia investigations.  The confidential sources were able to

26  provide information related to the individual who mailed suspicious packages, some of which

27

28

contained MDMA, from San Jose, CA to Florida and Georgia.  DEA agents in Atlanta, Georgia have also developed a confidential source related to their investigation.  (Affidavit of Michael K. Robinson-page 28 (001577))

The government's investigation was very effective through the use of traditional techniques.  The government successfully introduced two undercover agents to the organization investigated I this case.  Both undercover agents gained the trust of Derrick Vu, evidence by Vu's willingness to sell MDMA to them.  (Affidavit of Michael K. Robinson page 29-(001578)

Surveillance was also very successful.  On April 4, 2005, agents conducted surveillance at the Soo Fong Restaurant located at 3801 Third Street, #370 Bay View Plaza, San Francisco, CA.  The surveillance was conducted based on information gathered from the interception of phone calls made to and from **Target Telephone #2**.  Agents observed Eric Zi Ping Lei arrive at the restaurant.  As described earlier in this Affidavit in Section VI B under the heading "Wire Interception of **Target Telephone #2** and Related Physical Surveillances", Eric Zi Ping Lei handed a large amount of cash to a male later identified as Peter Liu.  Lei retrieved a bag from his vehicle and gave it to an unidentified female. (Affidavit of Michael K. Robinson page 31 (001580). The female gave the bag to Peter Liu shortly before Liu's departure from the area. Minutes after Liu's departure, Lei also departed the area.  Later the same day, both Liu and Lei separately returned to the restaurant where Liu proceeded to carry a bag to Lei who was waiting at his vehicle and handed the bag to Lei.  Lei then departed the area.

On April 6, 2005, agents conducted surveillance at the Soo Fong Restaurant located at 3801 Third Street, #370 Bay View Plaza, San Francisco, CA.  The surveillance was conducted based on information gathered from the interception of phone calls made to and from Target Telephone #2.  Agents observed Eric Zi Ping Lei arrive at the restaurant and hand Peter Lei an

4

object.  Lei then departed the area.  Agents followed Peter Liu to Mercury Street in San Francisco, then to O'Farrell Street in San Francisco, and then to the Mission Bay Golf Center located at 1200 6th Street, San Francisco.  Peter Liu later departed the golf center and surveillance was lost. (Affidavit of Michael K. Robinson page 31 (001580)

On April 13, 2005, agents conducted surveillance at 925 Blazingwood Avenue in Cupertino, CA and at the Soo Fong Restaurant located at 3801 Third Street, #370 Bay View Plaza, San Francisco, CA.  The surveillances were conducted based on an undercover operation in which an undercover agent ordered 2,000 MDMA pills from Derrick Bu on that date.  As described earlier in this Affidavit in Section VI B under the heading Wire Interception of Target Telephone #2 and Related Physical Surveillances", agents observed Eric Zi Ping Lei depart his residence.  Agents followed Lei to the restaurant and observed Lei enter the restaurant.  Agents later observed Lei depart the area and drive to the intersection of Barneveld Avenue and Sweeny Street in San Francisco, CA.  Agents also observed Peter Liu depart the Soo Fong Restaurant. (Affidavit of Michael K. Robinson page 32 (001581)

Agents followed Peter Liu to the residence at 120 Mercury Street in San Francisco. Agents then observed Peter Liu walk from 120 Mercury Street carrying a bag.  Agents later followed Peter Liu to the area of Barneveld Avenue and Sweeny Street in San Francisco.  Agents then observed Lei meet with Peter Liu and walk back to his vehicle carrying a bag.  Agents followed Lei to the Cupertino Village Shopping Center on Wolfe Road in Cupertino, CA where Lei met with Derrick Vu.  Agents then followed Derrick Vu to the Flames Restaurant located at 449 S. Winchester Blvd., San Jose, CA, where Vu sold 2,000 MDMA pills to the undercover agent.  Agents then followed Derrick Vu to McKee Road and Jackson Avenue in San Jose where he met with Eric Zi Ping Lei.  Agents later followed Lei to the Washington Mutual Bank located at 10250 South De Anza Blvd., Cupertino, CA.

5

On April 23, 2005, agents conducted surveillance at 925 Blazingwood Avenue in Cupertino, CA.  The surveillance was conducted based on information gathered from the interception of phone calls made to and from Target Telephone #2.  As described earlier in this Affidavit in Section VI B under the heading "Wire Interception of Target Telephone #2 and Related Physical Surveillances", agents observed Eric Zi Ping Lei depart the residence in his vehicle.  Agents followed Lei to the area of the Soo Fong Restaurant located at 3801 Third Street, 3370 Bay View Plaza, San Francisco, CA.  Agents observed Lei park on Newhall Street.  (Affidavit of Michael K. Robinson page 32 ).   An agent then observed Peter Liu, carrying a bag, enter the passenger side of Lei's vehicle and then exit the vehicle without the bag.  Agents followed Lei to the Pacific Supermarket in San Francisco where a male, later identified as Man Tao, exited a Toyota Camry and entered the front passenger side of Lei's vehicle.  An agent then observed Man Tao exit the vehicle appearing to old an object under his coat and enter the Toyota.  Agents followed the Toyota away from the supermarket.  San Francisco Police Department Officers later conducted a traffic stop on the Toyota and seized approximately six ounces of cocaine from the vehicle following a consent search.    This seizure demonstrates the effectiveness of the operation using traditional investigative means.   Following his arrest, Man Tao told San Francisco Police Department officers that he had received the cocaine from an Asian male whose name he provided to the officers but which was not familiar to the agents who are conducting this investigation. Robinson Affividavit, Id at 4.

Man Tao is currently facing charges related to this seizure of cocaine that are pending in San Francisco County Superior Court.  The Affidavit is silent on why Tao was not developed as a witness or a source that could have been used rather than a wiretap.


On May 12, 2005, agents established surveillance at the Soo Fong Restaurant located at

3801 Third Street, 3370 Bay View Plaza, San Francisco, CA. Agents observed Liu exit the rear door of the restaurant and sit under a tree. An agent then placed a ruse phone call to Target Telephone #3, 415-756-2064 and simultaneously observed Peter Liu answer a cellular phone while sitting under the tree. Surveillance was then terminated. (Affidavit of Michael K. Robinson Id at page 33).

S/A Robinson stated, "The source of supply of Eric Zi Ping Lei (user of **Target Telephone #1** and **Target Telephone #2**) was identified as Peter Liu. It is believed that Peter Liu is continuing his MDMA trafficking by using **Target Telephone #3**. The two prior wiretap interception orders issued in this case did not result in the identification of any member of the MDMA trafficking organization who is at a higher level than Peter Liu. Interception of wire communications to and from **Target Telephone #3** is therefore necessary to identify members of the organization who are at the same level or higher than Peter Liu. The ongoing and unsatisfied goals of this investigation include identification of all members of the Peter Liu organization, its major buyers, and sources of supply; its methods of drug distribution; its means of distributing and concealing proceeds and assets; and developing prosecutable cases against each of them. (Affidavit of Michael K. Robinson Id at page 40. The affidavits used Peter Liu and Pong Lin Liu interchangeably although they are different people. The investigation presented to the court may have correctly identified the wrong target, a hearing is necessary to flesh out this issue

Robinson's declarations also states "At approximately 11:25 a.m., a surveillance agent observed Pong Lin Liu in the area of 2509 San Bruno Avenue, San Francisco, CA. At approximately 11:31 a.m., surveillance agents observed Lei arrive in the area of 2509 San Bruno Avenue, San Francisco, CA. Agents then observed Pong Lin Liu and Lei meet in Lei's vehicle.

7

Based on his training and experience, the officer believed that Lei met with Pong Lin Liu in the area of 2509 San Bruno Avenue at that time to conduct a drug transaction."

## II.

## NEED FOR INTERCEPTION

"Necessity" in the Title III context refers to the government's showing that the goal of the investigation could not be obtained through normal investigative techniques – thus, the wiretap is necessary.  18 U.S.C. § 2518(3) (c) (3) ("Upon such application the judge may enter an *ex parte order* . . . authorizing . . . interception of . . . electronic communications . . . if the judge determines on the basis of the facts submitted by the applicant that . . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."). Title III necessity shortcomings are one of the key defense challenges to a wiretap.

The Affidavit of S/A Robinson sets forth the necessity for the interception of wire and electronic communications from target telephone # 2 and target telephone # 3 in this case.  Robinson claims that normal investigative techniques have been tried and failed to achieve the objectives of this investigation or appear reasonably unlikely to succeed if tried, or are too dangerous to employ. Id.  Robinson asserts that the interception of communications over target telephones 2 and 3 is necessary to enable the government to achieve the objectives of the investigation, (1) to obtain direct evidence of the entire scope and personnel involved in MDMA trafficking conspiracy; (2) to identify the suppliers and importers of MDMA who assist the target subjects; (3) to identify the customers of the target subjects; (4) to identify stash locations where MDMA is stored prior to distribution; and (5) to identify the disposition of proceeds generated by the organization's MDMA trafficking.  Id. Robinson then proceeds to list the investigative techniques which have been used or which he has considered using to date and an explanation why the techniques are not likely to succeed in identifying the full scope of this conspiracy.  Robinson Affidavit at 26

S/A Robinson reviews the use of other wiretaps targeting the suspects; the use of undercover agents and informants; consensual recordings; physical surveillance;  pen register, trap and trace devices, toll analysis and subscriber information; search warrants; interviews, grand jury subpoenas and immunity; financial investigation; trash searches; and police reports and arrest records.  Id at 29, 30.

### III.

### RELEVANT AUTHORITY FOR TITLE III WIRETAPS

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C §2510 et seq, prohibits electronic surveillance by the government except under carefully defined circumstances. The procedural steps provided in Title III requires "strict adherence."  United States v. Blackmon, 273 F.3d 1204, 1207 (9th Cir. 2001).  Congress[2] sought to limit the use of electronic surveillance by law enforcement officers to circumstances in which normal investigative procedures are unlikely to succeed. 18 U.S.C. §2518(1)(c) requires applications for intercept orders to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  See United States v. Robertson, 15 F.3d 862, 874 (9th Cir. 1994).[3]  Before approving an intercept order, a judge must determine if the foregoing requirement has been met "on the basis of facts submitted by the applicant."  18 U.S.C. § 2518(3) (c).  See, United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.

---

[2]      Congress, in the Electronic Communications Privacy Act of 1986, 100 Stat. 1848, and the Communications Assistance for Law Enforcement Act of 1994, 108 Stat. 4279, extended the statutory protection afforded by Title III to electronic pagers and cordless telephones.


[3]      The Senate Committee on the Judiciary, Report on the Omnibus Crime Control and Safe Streets Act of 1967, 90th Cong., 2d Sess. (S.Rep. 1097, April 29, 1968) notes at page 101:

"Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. . ."

1993); United States v. Santora, 600 F.2d 1317, 1321 (9th Cir. 1979); United States v. Spagnuolo, 549 F.2d 705 (9th Cir. 1977); United States v. Kalustian, 529 F.2d 588 (9th Cir. 1975). "This necessity requirement means that the affidavit must set forth a factual background that shows that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986). "[U]tmost scrutiny must be exercised to determine whether wiretap orders conform to Title III." United States v. Blackmon, supra (quoting United States v. Kalustian, supra at 589.)

While electronic surveillance need not be used only as a last resort, wiretaps are not to be "routinely employed as the initial step in a criminal investigation." United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820 (1974); United States  v. Bailey, 607 F.2d 237, 241 (9th Cir. 1979) cert. den., 445 U.S. 934 (1980). The "necessity requirement" exists to limit the use of wiretaps because of their highly intrusive nature and to assure that wiretapping is not resorted to in situations where "traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153, n.12, 94 S.Ct. 977 (1974); United States v. Commito, 918 F.2d 95, 98 (9th Cir. 1990); United States v. Smith, 893 F.2d 1573, 1582 (9th Cir. 1990); United States v. Brown, 761 F.2d 1271, 1275 (9th Cir. 1985). "Taken together, __ 2518(1)(c) and 3(c) require a full and complete statement regarding necessity." Blackmon, supra at 1207; United States v. Castillo-Garcia, 117 F.3d 1179, 1187 (10th Cir. 1997). If the application does not contain an adequate "statement" concerning the use of other investigative procedures, a warrant based upon such an application is invalid. United States v. Donovan 429 U.S. 413, 435, 97 S.Ct. 658 (1977).

> "A district court must reject a wiretap application if law enforcement officers have not first attempted, without success, traditional investigative methods that 'easily suggest themselves and are potentially productive and not unduly dangerous.' United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir. 1985). Taken together, §§ 2418(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order. Id. at 1485. The purpose of the necessity requirement is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. United States v. Kahn, supra, 415 U.S. at 153 n.12."

United States v. Carneiro, 861 F.2d 1171, 1176 (9th Cir. 1989).

10

The Government must overcome the statutory presumption against granting a wiretap application.  United States v. Ippolito, 774 F.2d 1482, 1486 (1985).  Absent specific circumstances that render normal investigative techniques particularly ineffective, the application must be denied.

Id. at 1486; United States v. Lilla, 699 F.2d 99, 100-04 (2d Cir. 1983).  Allegations that the crime being investigated is inherently difficult to solve will not suffice.  United States v. Martinez, 588 F.2d 1227, 1231 (9th Cir. 1978).  "Bald conclusory statements without factual support are not enough."  United States v. Commito, supra 918 F.2d at 97 (quoting Martinez, supra at 1231);  United States v. Abascal, 564 F.2d 821, 826 (9th Cir. 1977), cert. den. sub. nom., 435 U.S. 942 (1978); United States v. Lilla, supra, 699 F.2d at 104.  "[W]e require a full and complete statement of specific allegations indicating why normal investigative procedures failed or would fail in a particular case."  United States v. Blackmon, supra 273 F.3d at 1207.  Although the necessity requirement "is tested in a practical and common-sense fashion," to determine the reasonableness of a specific alternative technique, a "particularized showing" is necessary.  United States v. Echavarria-Olarte, 904 F.2d 1391, 1396 (9th Cir. 1990); United States v. Spagnuolo, supra, 549 F.2d at 711; United States v. Martinez, supra, at 1231.  The reason for requiring specificity is to prevent the Government from making general allegations about classes of cases and thereby sidestepping the necessity requirement in the particular investigation for which the wiretap is sought. Ippolito, supra, 774 F.2d at 1446. As the court in Ippolito observed:

> "[W]e must be careful not to permit the Government merely to characterize a case as a "drug conspiracy' . . . that is therefore inherently difficult to investigate.  The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail." [Original emphasis.] (Quoting United States v. Robinson, 698 F.2d 448, 453, (D.C. Cir. 1983)) Id. at 1446.

Accord: United States v. Commito, supra at 97.

In United States v. Kalustian, supra, 529 F.2d at 590, the Ninth Circuit held that mere conclusory statements that traditional procedures have failed in the past and are likely to fail in the future were insufficient compliance with the statutory requirement, requiring suppression of the evidence.  The Kalustian panel stated:

> "Obviously, electronic surveillance can facilitate criminal investigation....But Title III does not allow wiretapping to replace such other techniques unless they 'have been

11

tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The Government failed in this case to satisfy 18 U.S.C. §2518(a)(c). Its application did not adequately show why traditional investigative techniques were not sufficient

in this particular case. A judge reviewing a wiretap application is handicapped without such a showing. Title III and the individual's right to privacy, which it seeks to preserve, demand no less than a full and complete statement of underlying circumstances."

The Kalustian panel concluded that the affidavit did not enlighten the magistrate why the conspiracy in that particular case presented any investigative problems which were distinguishable in nature or degree from any other conspiracy. Id. at 589. See Blackmon, supra at 1210 (**"These boilerplate assertions are unsupported by specific facts relevant to the particular circumstances of this case and would be true of most if not all narcotics investigations**." [Emphasis added.]). See also, Castillo-Garcia, supra, at 1188 (statements must be factual and must specifically relate to the targeted individuals, "boilerplate" allegations are insufficient); United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1089)("bare conclusory statements that normal techniques would be unproductive, based solely on an affiant's prior experience, do not comply with the requirements of 2518(c).")

Since "'necessity is a keystone of Congressional regulation of electronic eavesdropping,' United States v. Williams, 580 F.2d 578, 587-88 (D.C. Cir.), cert. den. sub. nom., Lincoln v. United States, 439 U.S. 832 (1978), courts closely examine challenges for noncompliance and reject applications that misstate or overstate the difficulties involved. See C. Fishman, Wiretapping and Eavesdropping, §89 (1978)." United States v. Lyons, 507 F.Supp. 551, 555 (D.Md. 1981), aff'd., 695 F.2d 802 (4th Cir. 1982). See also United States v. Spagnuolo, supra, 711 n.3; United States v. King, 478 F.2d 494 (9th Cir. 1973).

In sum, the affidavit must show (1) why in this particular investigation (2) normal investigative techniques (3) employing normal resources (4) in good faith (5) have failed to make the case (6) in a reasonable period of time.[4] These criteria must be satisfied each time an extension is

---

[4] See, United States v. Spagnuolo, supra, 549 F.2d at 710:

"[T]he Affidavit must reveal that normal investigative techniques have been employed in a good faith effort to determine the identity of those violating the law and to assemble sufficient evidence to justify their prosecution and that

sought for continuation of the electronic surveillance.  18 U.S.C. § 2518(5).  In addition, these criteria must be independently satisfied with respect to each new individual whose telephone is sought to be taped.  See United States v. Carneiro, supra, 861 F.2d at 1176-1177.  See also, United States v. Santora, supra, 600 F.2d at 1321-22.[5]

---

these efforts have failed to achieve their ends.  The good faith effort need not have exhausted all possible uses of ordinary techniques.  What is required is a showing that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time."  [Footnote omitted; emphasis added.]

[5]  As explained by the Court in  United States. v. Santora, supra, at 1321-22:

"But this does not mean that once the government has established the inadequacy of investigative alternatives relating to certain suspects, it may then dispense with the required showing when applying to tap the telephones of other conspirators . . . .

"While the government's first affidavit was sufficient to support the initial intercept order, it was not sufficient to establish that alternative investigative techniques would not succeed with respect to other suspected conspirators whose telephones were later tapped . . . . To support the claim that normal investigative techniques were inadequate, the government relied almost entirely on its previous affidavit....

"The affidavit in support of the order failed to recite that any specific efforts had been made by federal agents to investigate the activities of those persons whose telephones were to be tapped to discover each of those individuals' complicity in the offenses.  Reference to the previous affidavit was insufficient to meet the requirement of Section 2518(1)(c) because the statements in that affidavit focused on the difficulties in infiltrating the portion of the conspiracy that operated out of the AAA Appliance Company.  No

showing was made that normal investigative techniques would be unlikely to uncover the activities of the other alleged conspirators whose telephones were tapped under Intercept Order No. 4700."  [Emphasis added.]

13

The application of these principles to S/A Robinson's Affidavit compels the conclusion that the statutory criteria were not satisfied, inter alia, by the affidavit's failure to show why traditional investigative techniques were not sufficient to expose the crime.  If the affidavit fails to do so, "no part of the contents of the [intercepted wire or oral] communication, and no evidence derived there from may be received in evidence in any trial."  18 U.S.C. §2515 and 2518(10) (a).    In fact the investigation was going quite well, informants were developed, buys made, surveillance conducted and the organization had been infiltrated.

In addition, the evidence shows that after deleting the false and misleading statements in Robinson's Affidavit and including the facts intentionally and recklessly omitted from the affidavit, other investigative techniques easily suggested themselves, were potentially productive, and not unduly dangerous.  Ippolito, supra, 774 F.2d at 1486.  See, United States v. Blackmon, supra, 273 F.3d at 1207-08.  Cf. United States v. Apodaca, 820 F.2d 348, 350 (10th Cir. 1987).

## IV.
### THE ROBINSON AFFIDAVIT FAILS TO SHOW WHY CONVENTIONAL INVESTIGATIVE TECHNIQUES WERE INSUFFICIENT TO EXPOSE THE CRIME.

The affidavit must provide a factual basis that normal investigative techniques would be unsuccessful in this investigation setting itself apart from any other large narcotics conspiracy.  The Affiant cannot throw up his hands and say he is at a "loss" because the crime is in the nature of a conspiracy and previous attempts have failed in the past and the conspiracies are inherently difficult to investigate.  United States v. Kalustian, supra, at 590;  Ippolito, supra, 774 F.2d at 1446; United States v. Martinez, supra at 1231; United States v. Robinson, supra, at 453.

When investigative techniques are employed together that they are valuable and form the basis of the majority of criminal prosecutions in narcotics cases.  For example, in this case, when physical surveillance is used in conjunction with other traditional techniques, such as the information from informants, the resulting information was proof of the elements of the offense and was useful in identifying co-conspirators.  The specific question to be addressed is why this case differs in nature

14

and degree from any other narcotics conspiracy and why, in this case, normal investigation techniques would not have sufficed to justify the wiretap on Mr. Pong's cell phone? That question is not answered in the affidavit.

Rather than analyzing the application of conventional techniques to the instant case in toto, Robinson examines each investigative technique individually and in a vacuum in his affidavit.  In presenting each technique in isolation, Robinson overlooks the synergistic effect that multiple techniques achieve when they are truly employed together in achieving an investigation's objectives.  Robinson's failure to analyze the combined effect of traditional investigative techniques underscores the speculative boilerplate language he repeatedly returns to in the affidavit in dismissing traditional investigative techniques as unworkable and/or unproductive.  In this case, the instant wiretap is the "holy grail" that Robinson is seeking and his analysis of each technique is merely a smokescreen to satisfy the necessity requirement in the Title III statute.  S/A Robinson's stated goal is to get a wiretap and the investigation's purported lack of success prior to this point is impermissibly colored by that objective.

The government cannot skirt the necessity requirement by simply informing the court of the investigating agents' conclusions regarding whether or not traditional investigative techniques will suffice to expose the crime.  Requisite necessity cannot be shown by "bare conclusory statements that normal techniques would be unproductive." *United States v. Ashley*, 875 F.2d 1069, 1072 (1st Cir. 1989).  The affiant cannot rely on "mere boilerplate recitations of the difficulties of gathering usable evidence," In place of specific factual allegations explaining why a normal investigation will not succeed.  *United States v. Kerrigan*, 514 F.2d 35, 38 (9th Cir. 1975).

Apart from toll analysis there was no real effort to employ traditional investigative techniques effectively against Mr. Pong, i.e. in combination, until the wiretap had been put in place.  In this case, there is nothing to distinguish the MDMA distribution conspiracy in which Mr. Pong is an alleged participant from any other large drug distribution conspiracy.  Robinson simply throws up his hands and says it is too difficult to expose this particular conspiracy when, in fact, no real effort was made to penetrate the organization from one month to the next. Robinson admits that the investigation was put off because of lack of manpower.  Robinson opted to use the wiretap, not out of necessity, but in order to save time and effort even though this investigation was blessed with a

15

highly placed informant [CS-1] from 2003 who knew specific details about the criminal organization and had extensive knowledge of the organization's distribution of MDMA throughout the Bay Area, Georgia, and the Florida area, yet virtually no effort was made to utilize his/her information in combination with other traditional investigative techniques or to have this informant introduces an undercover agent during the entire course of the investigation.

Despite having other informants in Georgia and Florida, Robinson discounts their effectiveness, by arguing in a vacuum, that their efforts "alone" cannot reveal the full scope of the target suspects activities or achieve the objectives of the investigation.  As the Blackmon Court observed at 1210:

> "In discussing informants, the affidavit states that despite the successful employment of four informants during the Miller pre-wiretap investigation, these informants are insufficient to meet the broad investigative purpose here because they 'typically only possess limited knowledge concerning the scope of the criminal enterprise.'   The affidavit further states that subjects like Blackmon 'know that it is their best interest to reveal as little as possible to others concerning how their business is conducted ... Therefore, without the evidence sought by the application, cooperating source information is insufficient to identify the entire criminal enterprise.'  **These statements would be true of most or all drug conspiracy investigations, and the limitations on the usefulness of informants, no matter how successful or potentially successful to the particular operation, would support the necessity of a wiretap**." [Emphasis added.]

Significantly, Blackmon insightfully also observes that "the government cannot cast its investigative net so far and so wide as to manufacture necessity in all circumstances.  Doing so would render the requirements of _ 2518 nullities." Id. at 1211.

Here, Robinson lacks the incentive to actively pursue traditional investigative avenues is seen in the word-for- word duplication of the affiants' expertise, as well as their collective dismissal of traditional investigative techniques, from one month to the next, by the simple word processor techniques cutting and pasting without ever attempting such traditional techniques as introducing undercover officers as the investigation progressed and evolved.  See all Three Robinson Declarations have identical portion andidentical paragraphs].  Vitrually  identical sections in the Robinson's affidavits discussing  can be found in each affidavit regarding "Undercover Agents and

16

Confidential Informants,"  "Pen Registers, Trap and Trace Devices, Toll Analysis ," "Search Warrants," "Interviews, Grand Jury Subpoenas and Immunity," "Financial Investigation," "Trash Searches" and "Police Reports and Arrest Records."   Although some court's have sanctioned this repetition of boilerplate language, it was certainly not the intent of Congress in passing Title III that mere repetition of conclusory statements from one wiretap application to the next would satisfy the necessity requirement  nor is it the law of this Circuit.  See Blackmon, supra, at 1208 (the application was nearly a "carbon copy" of a previous application for a different suspect and contained material omissions as applied to the defendant); United States v. Carneiro, supra, 861 F.2d at 1180-81(a subsequent wiretap application appeared to be a "word processor copy" of the allegations set forth in the initial wiretap application for a co-conspirator).  "It is inadequate to simply carry over statements from prior applications as to other suspects without making further investigative attempts." Blackmon, supra, at 1209.

        In his affidavit, Robinson claims that physical surveillance cannot conclusively determine the identities of additional conspirators or their roles in the organization or identify the sources of supply for narcotics or narcotics proceeds. Id at 34 Robinson also notes that physical surveillance cannot detect what occurs inside locations utilized by associates of Pong and cannot detect drug and money laundering transactions telephonically orchestrated by the organization leaders that are subsequently conducted by their street level associates. Id at 34  In addition, Robinson discounts the use of interviewing persons believed to be involved in the conspiracy or requiring them to appear before a federal grand jury because the targets and their confederates would be disingenuous, uncooperative and invoke their Fifth Amendment privilege not to talk with the agents or to testify. Id at 37  Yet, many of the individuals name like Derrick Vu and Eric Lei have actually ended up disproving these facts

        Wiretaps are expensive and time-consuming, and are typically only used in fairly serious cases.  With the corresponding high federal sentencing exposures, the likelihood that co-defendants will flip and become cooperating witnesses increases, that option was not explored until "post" wire taps in this case.

17

Each investigative technique has it own limitations.  <u>Blackmon</u>, supra, at 1210 ("The purged application does not meet the full and complete statement requirement of _ 2518(1) (c) because it makes only general allegations that would be true in most narcotics investigations...the affidavit contain boilerplate conclusions that merely describe inherent limitations of normal investigative procedures.")  While physical surveillance alone cannot detect what occurs inside a location, an undercover agent or an informant, in the right place at the right time, can obviously "detect" what occurs inside a location, as well as what drug and money laundering transactions are being conducted by the use of telephone and telephone paging devices, when used the informants are used in conjunction with physical surveillance.  In this case, the investigation had a highly placed informant and highly knowledgeable who, according to Robinson's affidavit, actually knew the number of MDMA tablets being distributed and by whom on a monthly basis throughout the Bay area.

Further, while "cold" interviews of persons believed to be involved in the conspiracy may be of limited use, Robinson fails to consider arresting or threatening to arrest specific suspects and turning them into informants as part of the ongoing investigation. It is a fundamental investigative precept that there must be some sort of leverage over a suspect before an interview can be truly productive.  Robinson even rejects the use of search warrants, claiming that their use would not yield a considerable quantity of narcotics proceeds or relevant documents, nor would the searches likely reveal the total scope of the criminal operation and the identities of the co-conspirators. <u>Id</u>. P 27-29. Robinson does not distinguish why search warrants would be less useful in this investigation as opposed to any other investigation of a drug distribution conspiracy.  Search warrants, which were eventually employed in this case, are most useful when combined with other investigative techniques and when based on timely information.  In any event, as stated by the Court in <u>Blackmon</u>, supra at 1210:

> "[T]he application discusses search warrants and witnesses.   It justifies the lack of use of search warrants by stating that they "would be unlikely to produce evidence which would identify fully the other members of the organization, the organizational structure, the scope of the narcotics trafficking conspiracy, or the sources of supply." Witnesses were not used because "interviews of witnesses [would] not be successful in developing sufficient evidence to prosecute this entire organization."  **These boilerplate assertions are unsupported by specific facts relevant to the particular circumstances of this case and would be true of most if not all narcotics investigations**.   This is simply not enough." [Emphasis added.]

Although Robinson has recited the general limitations of a search warrant, there is clearly no factual basis set forth why a search warrant would not be advantageous in this particular case as opposed to any other narcotics conspiracy.  In this case, for example, the government had CS-1 who could advise the agents when and where narcotics transactions were occurring or were about to occur.  Consequently, combined with surveillance and other investigative tools, it is likely that a search warrant could be obtained and contraband seized at the described location with the time of the execution of the warrant coordinated with information provided by the informant.

Robinson also states that if a search warrant were to be executed at the premises of some of the subjects of this investigation, it would only serve to alert the others.  The execution of a search warrant on any given occasion does not end an investigation.  Very often, a search warrant stimulates a conspiracy, as traffickers remove to replenish supplies and to raise funds for additional purchases.  Narcotics traffickers are typically locked into a supply and demand cycle, which must be actively pursued despite interruptions in distribution.  See Robinson Affidavit, ¶ 25, p. 21   Further, any affidavits in support of search warrants can be sealed while the investigation is progressing.

Robinson simply concludes, without presenting specific facts, those traditional investigative techniques such as physical surveillance, witness interviews, search warrants, pen registers and telephone toll records in and of themselves rarely succeed in gathering evidence of the full scope of the criminal activities of the co-conspirators under investigation.  If this were true, there would never be any criminal prosecutions of drug conspiracies without the use of a wiretap.  Although each investigative technique does not provide information which, in and of itself, permits the prosecution of all the co-conspirators under investigation, apart from a complete confession there is no single investigative technique which, by itself, permits the prosecution of a suspect.[6]  It is when normal

---

[6]       "That pen registers do not reveal the identity of callers;  that drug dealers know it is in their best interest to reveal as little as possible;  that witnesses cannot lead to the prosecution of an entire drug organization;  and that traditional investigative methods do not reveal all are generic problems of police investigation.   Their generic nature does not dissipate simply because the government claims a vast investigative purpose. Wiretaps themselves could little achieve the investigative goals stated in the government's application."  [Emphasis added.]

19

investigative techniques are employed together that they form the basis of vast majority of criminal prosecutions in narcotics conspiracy cases.  There is no reason why traditional techniques used together could not have uncovered the members as well as the scope of this organization as opposed to any other garden variety narcotics distribution conspiracy, particularly in view of the organization's infiltration by two informants, one of whom was highly knowledgeable concerning the organization's activities.

In the present case, there is no reason why traditional techniques could not uncover the members of this organization as opposed to any other narcotics conspiracy.  Finally, this is no justification for the subsequent extensions of the initial wire  and electronic intercepts, and insofar as the Affidavits of DEA S/A Robinson are tainted by these intercepts, the information contained in the subsequent applications and affidavits must be excised and the evidence derived therefore must be suppressed.  United States v. Carneiro, supra; United States v. Ippolito, supra.  See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.3d.2d 441 (1963)

### STALENESS AND PROBABLE CAUSE

Like affidavits underlying search warrants, affidavits in support of electronic interceptions must be based on information that is sufficiently current to support a finding of probable cause.  *See, e.g., United States v. Domme*, 753 F.2d 950,953 (11th Cir. 1985) ("As with other types of search warrants, the probable cause needed to obtain a wiretap must exist at the time surveillance is authorized… It does not satisfy the probable cause standard if the government can demonstrate only that the items to be seized could have been found at the specified location at some tie in the past.  Rather, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues.") (internal citations omitted); *United States v. Tefhe*, 722 F.2d

---

Blackmon, supra at 1211.  In a more recent case, one court has stated that the limited use of physical surveillance accompanied by a 5-day analysis of pen registration does not establish the normal tools were sufficiently exhausted before the government requested a wiretap.  U.S. v. Gonzalez, 412 F. 3d 1102, 1112 (2005).

1114, 1119-20(3d Cir. 1983) ("The factors affecting staleness are more easily applied in cases of tangible property, rather than wiretaps.  However, the rationale is still valid.")  In this case stale evidence from 2003 is used to justify the wiretap.

V.

**THE AFFIDAVIT CONTAINS INTENTIONALLY OR RECKLESSLY FALSE STATEMENTS AND MATERIAL OMISSIONS WHICH PRECLUDE A FINDING OF NECESSITY.**

In Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978) the Supreme Court held that a defendant may go beyond the facial sufficiency of an affidavit supporting a warrant and challenge the truthfulness of factual statements.  Under Franks, a defendant must satisfy a two prong test to obtain an evidentiary hearing.  First, the defendant must make a "substantial preliminary showing" that the Affidavit contained actual falsehood, and that the falsity either was deliberate or resulted from reckless disregard for the truth.  At this stage, "proof of deliberate or reckless misstatements or omissions is not required.  Such proof is reserved for the evidentiary hearing."  United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985); United States v. Chesher, 678 F.2d 1353, 1360-62 (9th Cir. 1982).  All that is required is that the defendant makes a substantial showing that the affiant intentionally or recklessly misstated or omitted facts required to prevent technically true statements in affidavit from being misleading.  False statements and omissions are to be viewed commutatively.  United States v. Kiser, 716 F.2d 1268, 1274 (9th Cir. 1983); United States v. Stanert, supra, 762 F.2d at 782.  Declarations contradicting the allegations of an affiant are sufficient to obtain an evidentiary hearing.  United States v. DiCesare, 765 F.2d 890, 895 (9th Cir. 1985).  When the false statements relate to critical information for probable cause the fact of the false statement permits an inference of recklessness.  Rivera v. United States, 928 F.2d 592, 604 (2nd Cir. 1991); DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir. 1990); Hale v. Fish, 899 F.2d 390, 400 (5th Cir. 1990); United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986).

The second prong of the <u>Franks</u> test requires the court to find that the challenged statements are necessary to a finding of probable cause, <u>i.e.</u>, if exclusion would leave the affidavit with insufficient content to establish probable cause. <u>Franks v. Delaware</u>, <u>supra</u> 438 U.S. at 171-72. The <u>Franks</u> analysis has been extended to material omissions in wiretap applications. <u>United States v. Ippolito</u>, <u>supra</u>, 774 F.2d at 1486, n.1. Reckless or intentionally false statements or omissions that mislead the judge as to the true depth of an informant's actual involvement in an alleged conspiracy is material to the judge's finding of necessity and requires the suppression of the evidence obtained pursuant to the wiretap. <u>United States v. Simpson</u>, <u>supra</u>, 813 F.2d at 1471-72.

Thus, after an evidentiary hearing, if the court concludes that the magistrate was misled either by information that the affiant knew was false or would have known was false except for this reckless disregard for the truth, or by omitted material information, suppression is the appropriate remedy. <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984). A defendant may challenge false information supplied by another government agent to the affiant, even if the affiant did not know that the information was false. <u>United States v. Leon</u>, <u>supra</u> at 923 n. 24; <u>Franks v. Delaware</u>, <u>supra</u> 438 U.S. at 163 n. 6, 171; <u>United States v. Roberts</u>, 747 F.2d 537, 546 n. 10 (9th Cir. 1984).

### A.  **False Statements and Omissions in the Affidavit of S/A Robinson**

In the present case, in one of the only investigative techniques actually directed against Mr. Pong was the wiretap and surveillance that could have been skewed by confusion between Peter Liu and Pong Liu. Michael Robinson's affidavit specifically refers to Peter Liu as Target #3. Affidavit of Michael K. Robinson grand jury subpoenas were also served on bank account in the name of Peter Liu. (Affidavit of Michael K. Robinson p.38)

### Offer of Proof
### B.  **The Allegations Were Intentionally or Recklessly False and the Omissions Material to a Finding of Necessity for the Wiretap.**

The fact that the agent may have possessed sufficient information to establish probable cause, for example, but did not disclose the information, is irrelevant; it may not be added to the affidavit at a later date. <u>United States v. Davis</u>, 714 F.2d 896, 899 (9th Cir. 1983); <u>United States v. Rios</u>, 611 F.2d 1335, 1347, n.23 (10th Cir. 1978). In this case, S/A Robinson included information in his

Affidavit that he received from other law enforcement personnel.  False information relayed through other Government agents may also be challenged.  <u>Franks v. Delaware</u>, <u>supra</u> 438 U.S. at 163, n.6; <u>United States v. Leon</u>, <u>supra</u>  468 U.S. at 923, n.24; <u>United States v. Roberts</u>, <u>supra</u>, 747 F.2d at 546 n.10; <u>United States v. Cortina</u>, 630 F.2d 1212 (7th Cir. 1980).

        In <u>United States v. Ippolito</u>, <u>supra</u>, an FBI agent was aware that an informant could infiltrate a drug ring and would testify in court.  This agent instructed the informant to tell a second agent that he would not testify.  The second agent included in an affidavit to obtain a wiretap that alternate means were not available to obtain evidence, based upon the false statement of the informant.  The Ninth Circuit held the informant's induced statement was false, intentional, and material.  774 F.2d at 1484-86.  In <u>Cortina</u>, <u>supra</u>, an agent interviewed an informant and filled out "contact reports."  This agent provided information from the informant to the affiant.  When the "contact reports" were compared with the allegations in the affidavit, the "contact reports" did not support the allegations in the affidavit.  The court found that the conflicts between the "conflict reports" and the allegations relayed to the affiant were sufficient to establish that the agent providing the information to the affiant lied and that the lies were material.  630 F.2d at 1212, 1213.

        In this case, the asserted inability of agents and law enforcement officers to observe Mr. Pong and others at his residence picking up narcotics was cited as the one of the primary reasons why conventional investigative techniques would be ineffectual in exposing this MDMA distribution conspiracy and why a wiretap on Mr. Pong's cell phone was needed.  Therefore, evidence that the surveilling officers deliberately or recklessly reported that it was difficult/impossible to surveil Mr. Pong at his residence.   Declarations of counsel demonstrate that there were multiple vantage points that could have been used by surveilling officers to unobtrusively observe Mr. Pong.

VI.

### DEFENDANT HAS MADE A SUBSTANTIAL PRELIMINARY SHOWING OF INTENTIONALLY OR RECKLESSLY FALSE STATEMENTS/OMISSIONS MATERIAL TO NECESSITY WARRANTING A <u>FRANKS</u> HEARING.

The burden of establishing that an affidavit fails to include information that would negate probable cause, including intentionally false statements or statements made with a reckless disregard for their truth, rests with defendant.  <u>Franks v. Delaware</u>, 438 U.S. 154, 171, 98 S.Ct. 2674 (1978). He does not have to conclusively prove that the statements are false to be entitled to an evidentiary hearing; they must only produce a substantial showing of the falsity of the statements.  <u>Stanert</u>, <u>supra</u>, 762 F.2d at 781.  This showing can be made by affidavit, agents' reports, or other writings.  <u>Id.</u>, at 780.  If these submissions contradict the allegations of the affiant, a hearing is required where the challenged information is material to the finding of probable cause.  <u>DiCesare</u>, <u>supra</u>, 765 F.2d at 895.  Here, the defense has made more than a substantial preliminary showing of intentionally and recklessly false statements and omissions which are material to the finding of necessity, thereby entitling Mr. Liu to a <u>Franks</u> evidentiary hearing.  <u>United States v. Johns</u>, 857 F.2d 1131, 1133 (9th Cir. 1988); <u>United States v. Burnes</u>, 816 F.2d 1354, 1357 (9th Cir. 1987); <u>United States v. Ippolito</u>, <u>supra</u>; <u>United States v. Simpson</u>, <u>supra</u>.

In addition to outright falsehoods, "deliberate or reckless omissions of fact" may also be fatal to a wiretap affidavit. See *United States v. Stanert*, 762 F.2d 775, 780-81 (9th Cir.), as amended, 769 F.2d 1410 (9th Cir. 1985) ("The use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination.  By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw.  To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.")

Improper omissions may include a failure to supply known information that bears on an informant's reliability.  See *Illinois v. Gates*, 462 U.S. 213,230 (1983), The Ninth Circuit has accordingly explicitly disapproved the practice of excluding references to an informant's prior criminal history, holding that such information must be made available to the magistrate making a

Probable-cause determination.  See *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000). While recognizing the importance of protecting the confidentiality of police informants, the Court in *Reeves* held that an informant's criminal history could not be so "sanitized" as to completely obscure its "material essence."  *Id*.  We know nothing about the informants in this case and their backgrounds should be disclosed.

*Franks* omissions are not limited to leaving out the details of an informant's cooperation deal, or not revealing a cooperator's prior convictions for crimes of dishonesty.  The Ninth Circuit has also held that omitting the successes of traditional investigative methods can constitute *Franks* error, because it impairs the authorizing court's ability to evaluate necessity.  See *United States v. Simpson*, 813 F.2d 1462 (9th Cir. 1987).  In *Simpson*, the federal affiant alleged that the conspirators "had insulated themselves and their high-echelon accomplices from all but a small circle of associates." Such that "undercover agents, confidential informants, and witnesses could not penetrate the organization to the highest levels because of insulation tactics utilized." Id. At 1471.  The affiant in *Simpson* did not fully reveal the extent to which the government had infiltrated a drug conspiracy.  Id at 1471-72.   The Ninth Circuit upheld the district court's suppression of the electronic interceptions. Id.  As the Court explained, "Here, the specific facts withheld from the issuing judge About  this particular investigation reveals that traditional techniques could have led to the successful infiltration of the entire enterprise."  *Id*. At 1472-73.

The fact that the court was not advised of the confusion between Peter Liu and Pong Liu is certainly relevant here also.

One of the most glaring deficiencies in the affidavit is that it listed Peter P.C. Liu with a date of birth of 6/24/1960, as the Possible Interceptee" in an affidavit filed in support of the interception of wire communications over Target Telephone #3 (415-756-2064.  This information was recklessly false.  After further investigation agents identified Pong Lin Liu with a date of birth of 12/09/1962 as the actual interceptee.  It is unclear whether Pong Lin Liu was the continuous user of the phone referred to as Target Telephone #3 or Peter Liu.  The physical similarity between the two men is actually striking and agents could have mistakenly targeted the

25

wrong individual or they seemed to be confused about which party actually used the telephone. Peter Liu is also referred to as the Target #3 during surveillances conducted on April 4, 2005, April 13, 2005, and April 23, 2005. The birthdates mentioned as that of the Possible Interceptee is different from what is shown in the "Possible Interceptee" section of the affidavit that was filed in support of an application for an order authorizing the interception of wire communications over Target Telephone #3 See FIRST PERIODIC REPORT AT P. 5, 001615.

A wiretap application should be is an intensely fact-bound analysis that turns upon the particular application and affidavit. *See, e.g., United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988)

Moreover, when defending the wiretap applications and orders, the government must be limited to the facts and information contained within the application and affidavits when presented to the authorizing court. *See, e.g., United States v. Meling*, 47 F.3d 1546, 1551-52 (9th Cir. 1995) ("*Looking only to the four corners of the wiretap application*, we will uphold the wiretap if there is a substantial basis for these findings of probable cause.") (emphasis added). Note, however, that the government can incorporate testimony or affidavits by reference in the application (as long as these documents are physically before the authorizing Court).   The First Period Report represents the Government's good faith interest in disclosing information but it was not before the court when the wire tap was authorize.  Likewise, the criminal history in the affidavit is not that of the defendant but that of Peter Lui, the affidavit omits the success of traditional investigative methods and cannot support a finding of probable cause without misleading omissions.   The defendant is entitled to a Franks hearing to flush out the nature of the confusion in the affidavit and the extent of its deficiencies

Based on these facts and others, the defense has made more than a substantial preliminary showing of intentionally and recklessly false statements and omissions which are material to the

26

finding of necessity, thereby entitling Mr. Liu to a <u>Franks</u> evidentiary hearing. *United States v. Johns*, 857 F.2d 1131, 1133 (9th Cir. 1988); *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987); *United States v. Ippolito*, supra; *United States v. Simpson*, <u>supra</u>.

## CONCLUSION

It appears that the wiretap in this case is inappropriate because it is not clear from the warrant application that the government attempted a usual investigative technique prior to resorting to the wiretap.

It appears that the wire tap was unnecessary because the undercover agents had the ability to gain the trust of many of the individuals that the came into contact with.   The agents were able to earn the trust of the suspects almost immediately because of his relationship with the informant.  It appears that the government could have easily continued this investigative method to continue to infiltrate this particular group of suspects.  The government then allowed the investigation to go stale.

There was clearly no necessity for the intercepts of wire communications from Mr. Liu's or Mr. Pong's cell phone in this instance.  There was virtually no investigation directed against Mr. Liu or Mr. Pong prior to the application for the wiretap.  Other techniques were simply discounted or dismissed out of hand.[7]  In sum, there is no specific showing in Robinson's affidavit why this case

---

[7]  No attempt was made to introduce an undercover officer to Pong by CS-1; no attempt was made to purchase drugs, in order to move up the drug distribution ladder and gain the organization's trust;  no effort was made to turn any of the alleged co-conspirators into informants by threatening them with arrest or long periods of incarceration; a financial investigation against Pong had commenced but had  not been completed; no search warrants or trash search were attempted, but instead were dismissed out of hand because the affiant felt that search warrants might compromise the investigation, the evidence gleaned would be insufficient to arrest the suspects, that there was insufficient probable cause to execute a search warrant for any of the target suspect's residences,  and the records would not provide evidence of the full scope of the conspiracy; and trash searches by themselves are sufficient to prosecute or identify co-conspirators.  In each instance, the affiant points out the generic limitations of each of these techniques but, significantly, he does not consider utilizing the traditional investigative techniques in conjunction with each other, based on information from the informants, against Mr. Pong.

differed in nature and degree from any other narcotics importation and distribution conspiracy and why, in this case, normal investigative techniques would not suffice to expose the crime. Accordingly, all of the intercept orders must be quashed and all the derivative evidence suppressed. See 18 U.S.C. §2515.

DATED:  October 6, 2006                    Respectfully submitted,


_____
Kurt K. Robinson
Attorney for Defendant
Pong Liu

28

## DECLARATION OF KURT K. ROBINSON

I,     Kurt K. Robinson, declare as follows:

1.     I am an attorney at law duly licensed to practice before this Honorable Court, and I represent defendant of Pong Liu herein.  Mr. Pong Liu has standing as an "aggrieved person" to bring this motion to suppress evidence insofar as he was a target of the wiretaps referenced in this motion and his conversations and communications were intercepted on said wiretaps and electronic intercepts.  See, 18 U.S. C. §§ 2510(11) & 2518(10) (a).

2.     I hired a Private Investigator to determine whether he believes that traditional investigative techniques could have been used in this case.   As I advised the court, I am unable to attach that report at this time because it is unfinished.  I will file it immediately upon receipt.

3.     I ask the court to take Judicial Notice of Application CR-05 90031 filed January 27, 2005, Application CR-05 0136 filed March 30, 2005, and Application CR-05

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 6, 2006, at, Fremont, California.

_____

KURT K. ROBINSON

29

LiuMotiontoSuppressWiretapEvid

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28