*<u>E-FILED - 5/9/07</u>*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PONG LIN LIU a/k/a PETER P. LIU, et al.,<br><br>Defendants | NO. CR-05-00723-JW<br><br>ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO MAY 31, 2005 INTERCEPTION ORDER |

Defendant Pong Lin Liu's motion to suppress evidence seized pursuant to an order dated May 31, 2005 authorizing interception of calls on a cell phone allegedly being utilized by Peter P. C. Liu (actually Pong Lin Liu), but subscribed to by an individual named Calvin Luu ("interception order"), was transferred to me to decide. Since the Honorable James Ware, who is the assigned judge handling this multi-defendant case, issued the interception order, he disqualified himself from hearing the motion challenging his order. Defendant Pong Lin Liu contends that there was no probable cause for the issuance of the interception order and that the government failed to show the requisite necessity for the order. The court has read the papers submitted by the parties and heard the arguments of counsel. The motion to suppress is hereby denied.

## II. PROBABLE CAUSE

Defendant does not challenge the finding of probable cause except to say the

information in the affidavit for the interception must be current and in this case the information was stale.  Defendant's argument lacks merit.  Agent Robinson's affidavit did provide information from as early as 2003 to explain the history of the investigation. However, a review of the affidavit shows numerous apparent drug trafficking calls during April of 2005 involving the target telephone.  Robinson Affid. at, for e.g., 15-25 ("Affid."). There was clearly probable cause to believe that Peter P. C. Liu, mistakenly identified in the affidavit instead of his brother, Pong Lin Liu, was committing and had committed drug trafficking offenses, that communications relevant to the offenses would be intercepted, and that Peter Liu, a focus of wiretap investigation, would use the tapped phone.  *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir. 1995).  The fact that the government believed that Pong Lin Liu was Peter P.C. Liu does not negate the finding of probable cause.

## II.  NECESSITY

### A.  Requirement of Showing Necessity

An application for a court-authorized wiretap must include a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous, and facts indicating that normal investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

*United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir. 1986)(internal quotation marks and cites omitted). However, law enforcement officers do not have to exhaust every conceivable alternative before obtaining a wiretap.  *Id.*

The judge authorizing a wiretap has considerable discretion and the decision that a wiretap was necessary is reviewed on an abuse of discretion standard.  *Id.*

### B.  Use of Confidential Informants and Undercover Agents

Defendant Liu argues that confidential informants and undercover agents could have

ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO MAY 31, 2005 INTERCEPTION ORDER
NO.  CR-05-00723-JW

been used further to accomplish the goals of the investigation.  Michael Robinson, the DEA agent who submitted the affidavit in support of the application for the interception order, explained why confidential informants could not supply the information desired.  Affid., pp. 27-29.  The informants did not have access to the higher levels of the drug trafficking organization.  The primary informant, for example, did not even know Derrick Vu or Pong Lin Liu.  Further, the affidavit explained that confidential sources generally cannot infiltrate upper levels of organizations.

Agent Robinson also related in his affidavit how law enforcement had been unsuccessful in attempting to get Derrick Vu to introduce undercover agents to his supplier. *Id.* at 29. Robinson also explained that it is a common occurrence that suppliers do not want to be introduced to potential new associates.  *Id.*  Vu had told an undercover agent about high level individuals involved but neither identified them nor provided a way for an agent to make contact.

**C.  Carrying Out a Buy-Bust**

Defendant submits that law enforcement had enough evidence against his client and others to use a buy-bust and then arrest them.  Robinson explained in his affidavit that a buy-bust could have, at best, brought about the arrest of Vu, Phuong Nguyen and Eric Zi Ping Lei.  *Id.* at 29-30.  However, such action would not have assisted in learning the major players.  For example, law enforcement had learned from Vu that "he [was] two persons removed from the person importing the MDMA from Europe and that Eric Zi Ping Lei [was] only one of 'four or five' individuals who utilize[d] the same importer."  *Id.* at 30.  The law does not require an investigation to stop merely because the government has a prosecutable case against the target.  The Ninth Circuit has "consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of suppliers, major buyers or other satellite conspirators." *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir. 1990).  Further, as explained by Agent Robinson, there is no assurance that an arrestee will cooperate and the arrest may well compromise the investigation.  Affid. at 30.

ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO MAY 31, 2005 INTERCEPTION ORDER
NO.  CR-05-00723-JW

### D. Physical Surveillance

Agent Robinson explained in some detail the surveillance that had taken place and the importance of the prior wiretap orders in the success of those surveillances. *Id.* at 31-34. However, Agent Robinson also explained that constant surveillance increases the chances of being detected. *Id.* at 33. It was also apparent that the numerous surveillances that had taken place had not revealed the importers apparently involved in the drug network.

### E. Other Investigative Measures

Agent Robinson explained in his affidavit the lack of success of trash searches at various related addresses (*id.* at 34-35), the limited use made of information obtained from telephone toll records and from pen register analysis (*id.* at 35-36), the historical lack of success in getting useful information from financial records gathered through grand jury subpoenas (*id.* at 36-37, 40-41) and the reluctance to use search warrants in light of the potential of compromising the investigation (*id.* at 40).

### F. Suspect and Witness Interviews

Defendant argues that the government had made no attempt to "flip" a suspect. In oral argument, defendant suggested that *United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) supported the need to try this technique. Defendant also referred to *Gonzalez* as being "almost on all fours with this case." Neither argument is correct. First, *Gonzalez* does not require law enforcement to try and "flip" a witness in its showing of necessity for a wiretap. Second, the facts in *Gonzalez* are very different. In *Gonzalez*, the affidavits supporting the wiretap of a bus company, used in connection with investigation into an alien smuggling operation, contained false statements that were deliberately or recklessly included. Evidence tended to show that the affidavits misrepresented the limited use of pole cameras for surveillance in the investigation, misrepresented that further physical surveillance of premises was highly likely to be compromised, inaccurately portrayed the government's confidential informants as having less access to company's officers and owners than they

1  actually possessed, and misrepresented the ability of the government to place an
2  undercover agent in the company. Further, investigators had conducted only minimal
3  investigation. Surveillance of the premises could have identified individuals, such as those
4  who assisted in the illegal entry of persons for a fee, coming and going from the premises.
5  The use of confidential informants or undercover agents was a potentially productive, but
6  unutilized tool, and the use of grand jury subpoenas or search warrants could also have
7  aided the investigation. In the instant case, law enforcement was dealing with an
8  apparently large drug conspiracy, had conducted significant surveillance and had made use
9  of confidential informants and undercover agents to the extent believed to be productive.
10 Agent Robinson had explained that in a drug conspiracy case obtainable financial records
11 are usually of limited value. Further, unlike the situation in *Gonzalez,* Agent Robinson's
12 affidavit was not rife with misrepresentations.

### III. ORDER

Because the government has shown probable cause and necessity, defendant Pong Lin Liu's motion to suppress evidence obtained as a result of the May 31, 2005 interception order is denied.

DATED:    **May 7, 2007**

*Ronald M Whyte*
_____
RONALD M. WHYTE
United States District Judge

1
2  This is to certify that a copy of this ruling was E-Filed to counsel of record:
3
4  Dated:  **5/9/07**                              /s/ JG
                                                    Chambers of Judge Ronald M. Whyte
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO MAY 31, 2005 INTERCEPTION ORDER
NO.  CR-05-00723-JW